IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 10, 2004

### TRACY LYNNETTE GLENN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Gibson County**
**Nos. 6937, 6938      Joseph H. Walker, Judge by Designation**

_____

**No. W2003-00752-CCA-R3-PC  - Filed February 24, 2004**

_____

The petitioner originally entered an open guilty plea to aggravated robbery and child neglect and received concurrent sentences of eight years and eleven months and twenty-nine days, respectively, to be served in incarceration.  She timely sought post-conviction relief, which was denied.  In this appeal, the petitioner asserts defense counsel was ineffective and, thus, her guilty plea resulted from defense counsel's ineffectiveness.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Tom W. Crider, District Public Defender; and Periann S. Houghton, Assistant District Public Defender, for the appellant, Tracy Lynnette Glenn.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and John C. Zimmerman, District Attorney General Pro Tem, for the appellee, State of Tennessee.

### OPINION

At the petitioner's guilty plea hearing, the state outlined the following facts which would have supported the petitioner's convictions had she gone to trial on the indictment.  About 3 a.m. on June 6, 2000, the petitioner approached the victim at the Elks Lodge in Humboldt, Tennessee, and requested a ride to her car.  On the way there, the petitioner suggested they take a detour by her house.  The petitioner invited the victim inside.  Once inside, a female armed with a pistol and a male armed with a black revolver robbed the victim of his watch, two rings, a billfold containing over $700, and numerous credit cards.  At the direction of the perpetrators, the petitioner put the stolen items in a bag.  The perpetrators took nothing from either the petitioner or her house.

Later that same morning, the petitioner used one of the stolen credit cards to make clothing purchases at various stores.  A clerk from Victoria's Secret clothing store identified the petitioner as the person attempting to use one of the victim's credit cards to make approximately $1,800 worth of purchases.  When the police executed a search warrant at the petitioner's home, they found one of the stolen rings belonging to the victim in a coin drawer and a black revolver.  The police also

found several bags of clothing with credit card receipts indicating that they had been purchased in the hours following the robbery with one of the stolen credit cards.

At the time of the execution of the search warrant at the petitioner's house shortly after noon, an eleven-year-old child and several toddlers were present; however, neither the petitioner nor any other adult was present. No adult had been present since 6:00 a.m.

## THE POST-CONVICTION HEARING

At the post-conviction hearing, Willie Mae Glenn, the petitioner's mother, testified she overheard the conversation between defense counsel and the petitioner on January 29, the date of the petitioner's guilty plea. She testified defense counsel told the petitioner the minimum sentence she could receive was fourteen months. Ms. Glenn alleged defense counsel presented the choice of pleading guilty and receiving fourteen months or going to trial and receiving between eight and twelve years.

The petitioner testified she told defense counsel that she did not think the victim would testify against her, since he was married and would not want to publicize an adulterous affair with the petitioner. The petitioner stated she discussed possible defense witnesses with defense counsel. Witnesses whom the petitioner felt would provide testimony favorable to her defense included: the patrons of the Elks Lodge, the police officers called to the scene of the robbery, and the victim himself.

The petitioner testified that although she knew the identity of the female accomplice in the robbery, she did not share this information with the police. She admitted to discussing with a detective the possibility of helping the police as part of a plea agreement. The petitioner denied discussing such an agreement with defense counsel. The petitioner recalled a conversation with defense counsel three days prior to the trial date wherein he said, "Ms. Glenn, I feel that they're going to give you a chance this time, and you need to make sure you do what's right."

The petitioner admitted that at the time she was signing the open pleas, she asked defense counsel what the state was offering her. She conceded defense counsel told her the state was prepared for trial, and, if she went to trial, she would get anywhere from eight to twelve years. The petitioner stated defense counsel never discussed with her any conversations between the prosecutor and defense counsel regarding a plea agreement. The petitioner testified that on January 29, she knew, generally, what the state's witnesses would say. She admitted to using the victim's credit card at Victoria's Secret. She denied being shown the statement of the victim by defense counsel and denied that defense counsel ever interviewed the witnesses whose names she provided to him.

Defense counsel testified the investigating officer, Mike Lewis, wanted the petitioner to come forward with more information concerning the robbery. He recalled discussing with the petitioner the idea of providing information to the authorities as the basis for a possible plea agreement. He believed the petitioner was afraid that doing so would provoke the retaliation of one of the accomplices to the robbery. Contrary to the petitioner's testimony, defense counsel testified he discussed the case extensively with the petitioner and provided her with discovery materials.

-2-

Defense counsel stated he felt that all exculpatory and discovery materials were provided to him by the prosecution.

Defense counsel testified the petitioner missed one mandatory court date, and he advised her orally and by letter to turn herself in to the authorities. Defense counsel noted the petitioner did not always keep her appointments with him. He read to the post-conviction court excerpts from his written communications to the petitioner advising her of an upcoming court date and the need for her to make and keep an appointment with defense counsel prior to that date. She failed to keep the appointment. According to defense counsel, the petitioner was relying upon her belief that the victim would not appear in court to testify against her.

Defense counsel begged the state for a plea offer, which the prosecutor refused to grant. Defense counsel stated he raised the subject of possible defenses in a conversation with the petitioner during the weeks prior to the trial date, but she did not indicate a viable defense to the charges. He testified he told the petitioner that the evidence against her was "pretty overwhelming."

Defense counsel testified that on the day of the trial, he again discussed with the petitioner the likelihood of her conviction and immediately being taken into custody if she were convicted at trial. He stated the only concession the state would allow if the petitioner pled guilty was to offer no opposition to the petitioner's remaining on bond pending sentencing. The trial court agreed to withhold judgment until the sentencing hearing, thereby allowing the petitioner to remain on her current bond until sentencing.

Defense counsel testified that prior to entering her plea, the petitioner and he spoke at length concerning the state's evidence and the possible range of her sentence if she were convicted. He described taking "painstaking" care in describing the range of punishment to the petitioner. Defense counsel testified to a statement he wrote and which the petitioner signed, which stated:

> This letter is to verify that I have explained to you once again the nature of the charges against you. I have explained the elements of the offenses charged in the indictment and the penalty ranges. I explained to you all available defenses in this case. I have gone over with you all the discovery materials in this case. I have discussed with you and the witnesses that you might want to testify in your behalf. Also, I explained to you your right to testify, if you choose to do so, and if you did not testify, this could not be used against you.

Defense counsel testified the victim was present in court on the day scheduled for the petitioner's trial. He stated the police officers who executed the search warrant at the petitioner's house and the investigating officers were also present. Defense counsel admitted the petitioner had no fact witnesses for the defense, and that she did not complain about the absence of any defense witnesses in court. Defense counsel stated he and the petitioner discussed some potential witnesses but that after consideration, those people were deemed to be irrelevant witnesses unable to provide a viable defense. He testified he did not feel the petitioner had any witness that would be beneficial at trial.

Defense counsel believed the immediate freedom the petitioner would experience as a result of pleading guilty and remaining on her current bond pending sentencing was a factor in her decision to plead guilty. He recalled the petitioner telling him on the day of her plea that remaining on bond was important to her because it would allow her to arrange her affairs prior to incarceration.

The post-conviction court issued detailed findings of fact and conclusions of law. Among its findings were the following:

1. Defense counsel met with the petitioner numerous times and was prepared for trial.

2. The petitioner failed to keep appointments with counsel.

3. Defense counsel provided the petitioner with complete discovery.

4. All state witnesses, including the victim of the robbery, were prepared to testify against the petitioner.

5. No witnesses were presented at the post-conviction hearing that would have been beneficial to the petitioner.

6. Defense counsel did not coerce the petitioner into pleading guilty.

7. Defense counsel thoroughly explained to the petitioner all aspects of the guilty plea and did not misrepresent the range of punishment.

8. The trial judge thoroughly explained the range of punishment to the petitioner.

9. The petitioner was not a credible witness; defense counsel was a credible witness.

10. The petitioner failed to establish ineffective assistance of counsel and failed to establish that her plea was unknowing or involuntary.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that defense counsel failed to confer with her adequately and failed to interview defense witnesses, thus, resulting in an involuntary plea. The record shows otherwise.

The Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee criminal defendants the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

-4-

In Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the Supreme Court applied the two-part Strickland standard to ineffective assistance of counsel claims arising out of a guilty plea. The Court in Hill modified the prejudice requirement by requiring a petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. 474 U.S. at 59, 106 S. Ct. at 370; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

The claim of ineffective assistance of counsel is a mixed question of law and fact and subject to *de novo* review; however, we review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a *de novo* standard with no presumption of correctness. *Id*. We may neither reweigh or re-evaluate the evidence nor substitute our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 578 -79 (Tenn. 1997).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

The post-conviction court considered the petitioner's claim that defense counsel failed to interview and call witnesses in the petitioner's defense. The court found the petitioner had not presented any witnesses who would have been able to offer beneficial testimony in her defense. The evidence does not preponderate against this finding. The petitioner has failed to establish any prejudice relating to the alleged failure to interview witnesses.

Additionally, the post-conviction court considered the petitioner's claim that defense counsel failed to confer with her adequately. The court found defense counsel met with the petitioner several times during the course of the representation, despite the petitioner's difficulty in keeping scheduled appointments. The post-conviction court fully accredited the testimony of defense counsel, finding he shared complete discovery with the petitioner and was prepared for trial. The post-conviction court found the petitioner was not a credible witness. The evidence does not preponderate against the post-conviction court's findings. The petitioner failed to establish ineffective assistance of counsel.

**GUILTY PLEA**

The petitioner next contends defense counsel promised her a vastly reduced sentence would result from a plea of guilty, and such inducement rendered her plea involuntary. Due process demands that a guilty plea be entered voluntarily, knowingly, and understandingly. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The plea is involuntary if the accused is incompetent or "only if it is the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

The post-conviction court found the petitioner's incentive for entry of the guilty plea was that the victim and other witnesses against her were present at court prepared to testify against her on the trial date. The post-conviction court further found the petitioner's testimony that she thought she would receive a fourteen-month sentence in return for her guilty plea "defies credibility."

A thorough examination of the record confirms that the petitioner understood the significance and consequences of the decision to plead guilty. The trial court questioned her extensively at the time she entered the guilty plea about its meaning and import. The petitioner specifically stated she understood the range of her sentence was between eight and twelve years. There is no evidence in the record to suggest that the petitioner's plea was entered unknowingly or involuntarily.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE